UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| Philadelphia Indemnity Insurance Company, | Case No.: _____ |
| Plaintiff, | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| v. | **[JURY DEMAND REQUESTED]** |
| Vision For The World Ministries, Inc., | |
| Defendant. | |

Plaintiff, Philadelphia Indemnity Insurance Company ("PIIC") for its Complaint for Declaratory Judgment against Vision For The World Ministries, Inc. ("Vision for the World" or "the Church") states and alleges as follows:

## INTRODUCTION

1.     This declaratory judgment action is brought pursuant to 28 U.S.C. §§ 2201 and 2202. Plaintiff PIIC seeks a coverage determination with respect to claims brought by Defendant Vision for the World with respect to damage resulting from a third-floor pipe burst at property owned by Vision for the World located at 2201 North 35th Street, Milwaukee, WI.  The pipe burst was discovered February 26, 2021.

## THE PARTIES

2.     Plaintiff PIIC is a Pennsylvania corporation with its principal place of business in Bala Cynwyd, Pennsylvania and is a citizen of Pennsylvania for purposes of diversity jurisdiction.  28 U.S.C. § 1332(c)(1).

3.     Upon information and belief, Vision for The World is a Wisconsin non-stock corporation organized under the laws of the State of Wisconsin with its principal place of business located at 2201 North 35th Street, Milwaukee, WI.

4.     There is complete diversity of the parties under 28 U.S.C. §1332(c)(1).

## JURISDICTION AND VENUE

5.     The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

7.     This Court has personal jurisdiction over Defendant.

8.     Venue is proper in this District under 28 U.S.C. § 1391(b).

## JURY TRIAL

9.     Plaintiff demands a trial by jury.

## GENERAL FACTUAL BACKGROUND

10.     This matter involves property damage due to third-floor pipe burst at property owned by Vision for the World located at 2201 North 35th Street, Milwaukee, WI.

11.     The loss was discovered on or about February 26, 2021 in the evening when an individual from Vision for The World went to the Church and heard water running.

12.     PIIC responded by retaining the local adjusting firm, Sedgwick, who inspected the loss caused by frozen pipes on the top floor of the building.

13.     PIIC, through its adjuster, also retained the services of the engineering firm Envista to investigate the loss. On March 8, 2021, Envista was onsite at the Church to conduct the inspection. On March 25, 2021, Envista issued a frozen pipe investigation report.

14.     Upon inspection, the boiler system at the Church showed evidence of wear and tear and deterioration consistent with its age, having been completed in 1958, including extensive corrosion, mineral deposition, and long-term leakage.  In addition there were active leaks at the time of the inspection. Envista observed evidence of recent system service and modifications, including new components adjacent to aged equipment and the removal and relocation of other system components. At the time of inspection, the boiler was out of service and would not operate. Leakage was observed in the system piping, and the boiler failed to complete its initiation cycle when powered on. There were exposed control wires and the boiler had no tank pressure. The switch for the second floor circulation pump was taped over and the switches for the continuous-service pump and first floor pump were on-off switches with no automated controls.

15.     When Envista inspected the boiler room and other locations in the Church, they found an open window in the boiler room and determined it was possible there were multiple water leaks at the location, but the water was shut off at the time of the inspection and no longer leaking.

3

16.     According to church officials, the water originated from within a bathroom on the top floor. Envista also opined that a significant water leak originated on the top floor.

17.     The hot water circulation to the top floor of the Church had been taken out of service prior to the reported date of loss. The boiler system had been modified over its history, having removed the top floor from the hot water circulation heating system.

18.     Envista also opined that there was significantly less gas usage during the three months preceding the date of loss and therefore less heat provided in the church. During this time, the Church appears to have been closed due to the COVID pandemic. Energy bills presented by the church showed significantly reduced energy charges for the months of November 2020, December 2020 and January 2021.

19.     PIIC issued an initial reservation of rights letter to Vision for the World Ministries March 23, 2021 and a subsequent reservation of rights letter dated October 20, 2021.

20.     PIIC took an Examination Under Oath of Vision for the World May 27, 2021. An invoice was performed for work on the Church's "First Floor Offices Perimeter Heating Pump", dated November 11, 2020, was produced. No other invoice was produced for heating work or winterization at the Church for calendar years 2020 or 2021.

21.     At the end of November 2020 through February 2021, the Church was going Zoom-only services. No information was provided at the EUO to address how the heat was maintained under those circumstances.

22.     Utility invoices produced and discussed at the EUO showed significantly reduced energy consumption over the prior year. Pastor Marbley agreed the energy bills documented a significant reduction in energy usage. Pastor Marbley provided no explanation for the significant reduction in energy usage other than no one was in the Church.

23.     Vision for the World Ministries retained a public adjuster, Jordon Masters, in October 2021. PIIC provided its inspection reports from Sedgwick to Public Adjuster Masters and arranged to re-inspect the property with Public Adjuster Masters.

24.     In consultation with Public Adjuster Masters, PIIC requested Sedgwick to prepare three estimates:  one estimate to address damages due to the initial pipe break; a second estimate to address additional damages due to mold growth; and a third estimate for damages related to unrelated roof leaks. PIIC also retained an industrial hygienist with regard to potential asbestos and lead-based paint concerns present in the church.  PIIC also requested floorplans of the Church facility needed to complete these estimates.

25.     During the follow-up inspection with Mr. Masters, new damage to the entryway of the church and further damage to the chapel was documented from what appeared to be unrelated roof leaks. For that reason, PIIC also engaged an engineer, EFI, to complete a roof inspection and verify the cause of the new damage. A separate roof estimate was requested for these unrelated roof leak damages.

26.     The Church's failure to mitigate the roof leaks and other water infiltration resulted in a proliferation of mold growth in the Church facility.

5

27.     Public Adjuster Jordan Masters, attended the inspections of the Church in December 2021 with PIIC's representatives EFI and JS Held for a joint inspection. A scope and repair estimate was prepared by Sedgwick.

28.     The mold remediation estimate was prepared to document the additional costs necessary to repair the building due to the failure to mitigate damages timely. Public Adjuster Masters never provided any objection to Sedgwick's scope and repair estimate.

29.     PIIC maintains that the mold remediation costs were not caused by a covered cause of loss.  Further, even if covered, the amount the Church could recover would be limited to $25,000 based upon the policy provisions in the policy endorsement for mold.

30.     The roof assessment estimate documents damages unrelated to the pipe freeze claim and reflects the fact that the roof on the church is in extremely poor condition and there are multiple water intrusions in areas unrelated to the freeze damage from the pipe rupture. Further, the front façade of the church is very deteriorated and not stable.

31.     PIIC maintains that the roof assessment and repair costs were not caused by a covered cause of loss.

32.     PIIC maintains that the damages associated with the pipe burst are also not covered because the Church failed to maintain heat in the building or in the alternative to shut off the water if the heat was not maintained.  PIIC also maintains that the damages associated with the burst pipe are not covered because the pipe burst due to a failure to

maintain the boiler system, which was in poor condition and not functioning properly prior to the loss.

**INSURANCE POLICY**

33.     PIIC issued Vision for the World a commercial lines policy, Policy No. PHPK2161178 effective from September 18, 2020 to September 18, 2021 (the "Policy"). A copy of the Policy is attached as Exhibit "A". The Policy includes on the location schedule the Church located at 2201 N 35th St., Milwaukee, WI.

34.     The Policy contains a Property Coverage Part which includes a $95,000 limit of insurance for your business personal property and a $2,750,000 limit of insurance for buildings. The property coverage part contains a $5,000 business personal property deductible and a $5,000 building deductible. The commercial property coverage part declarations indicate 80% co-insurance.

35.     Among the Policy's provisions, are the following:

The policy contains the following insuring agreement:

**I.     "Loss" to covered property, covered causes of loss.**

Policy form number PI-ULT-007(11/98), titled Property Coverage Form, reads as follows:

**A.     Coverage**

We will pay for direct physical **"loss"** to Covered Property caused by or resulting from any of the Covered Causes of Loss.

**1.     Covered Property**

Covered Property, as used in this Coverage Form, means the following types of property for which a Limit of Insurance is shown in the Declarations.

7

**a.** **Your Business Personal Property,** and similar property of others in your care, custody or control:

**(1)** Located in or on the **"buildings"** described in the Declarations or within 1,000 feet of the described premises

**\*\*\*\***

**3.** **Covered Causes of Loss**

See the Causes of Loss Form.

**\*\*\*\***

**B.** **Exclusions**

See Causes of Loss Form.

**\*\*\*\***

**G.** **Definitions**

**1.** **"Buildings"** means buildings or structures.

**\*\*\*\***

**7.** **"Loss"** means accidental loss or damage.

(Ex. A., PIIC0095-PIIC0118).

Policy form number PI-ULT-008 (11/98), titled Causes of Loss Form, provides the following:

**A.** **Covered Causes of Loss**

**Covered Causes of Loss** means Risks of Direct Physical Loss unless the **"loss"** is:

**1.** Excluded in Section **B., Exclusions**; or

**2.** Limited in Section **C., Limitations**;

that follow.

**\*\*\*\***

8

(Ex. A., PIIC0119).

36.     Policy form PI-ULT-008(11/98), titled Causes of Loss Form, contains the following exclusions and limitations:

**B.     Exclusions**

**2.**     We will not pay for **"loss"** caused by or resulting from any of the following:

****

**b.**     Delay, loss of use, loss of market or any other consequential loss.

****

**d.     (1)**     Wear and tear;

**(2)**     Rust, corrosion, fungus, decay, deterioration, spoilage, contamination, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

****

**(6)**     Mechanical breakdown, including rupture or bursting caused by centrifugal force. However, this does not apply to any resulting **"loss"** caused by elevator collision;

**(7)**     Dampness or dryness of atmosphere; changes in or extremes of temperature; freezing or thawing.

Paragraphs **d. (3), (4), (6)** and **(7)** do not apply to **"computer property"**.

But if **"loss"** by the **"specified causes of loss"** or building glass breakage results, we will pay for that resulting **"loss".**

**e.**     Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated

under your control. But if **"loss"** by fire or combustion explosion results, we will pay for that resulting **"loss"**. We will also pay for **"loss"** caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**f.** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air-conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

**(1)** You do your best to maintain heat in the **"buildings";** or

**(2)** You drain the equipment and shut off the supply if the heat is not maintained.

This exclusion does not apply to **"computer property"**.

\*\*\*\*

**3.** We will not pay for **"loss"** caused by or resulting from any of the following. But if **"loss"** by a Covered Cause of Loss results, we will pay for that resulting **"loss."**

**a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph **1.** above to produce the **"loss"**.

**b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.** Faulty, inadequate or defective:

**(1)** Planning, zoning, development, surveying, siting;

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

> (3) Materials used in repair, construction, renovation or remodeling; or
>
> (4) Maintenance;
>
> Of part or all of any property on or off the described premises.
>
> This exclusion does not apply to **"computer property"**.

(Ex. A., PIIC0119-PIIC0123).

**C. Limitations**

> **1.** We will not pay for **"loss"** to:
>
> **a.** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for **"loss"** to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.
>
> **b.** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.
>
> \*\*\*\*

(Ex. A., PIIC0125).

37. In addition, form PI-ULT-072 (10/10), titled Limitations on Fungus, Wet Rot, Dry Rot and Bacteria, provides in part:

> **II**. **CAUSES OF LOSS FORM**, Section B. **Exclusions** is amended as follows:
>
> \*\*\*\*
>
> **B.** The following exclusions are added:

1.     Unless as provided for in Section **I.A. Coverage** above, we will not pay for **"loss"** or damage caused directly or indirectly by the presence, growth, proliferation, spread or any activity of **"fungus,"** wet or dry rot or bacteria. Such **"loss"** or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the **"loss."**

But if **"fungus,"** wet or dry rot or bacteria results in a cause of loss covered by this endorsement, we will pay for the **"loss"** or damage caused by that covered cause of loss.

2.     We will not pay for **"loss"** or damage caused by or resulting from continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

3.     We will not pay under:

    a.     The **Ordinance or Law** coverage extension in the **PROPERTY COVERAGE FORM**; or

    b.     The **ORDINANCE OR LAW COVERAGE** endorsement, if it applies to this policy:

For:

        **(1)**     **"Loss"** or expense sustained due to the enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to the presence, growth, proliferation, spread or any activity of **"fungus,"** wet or dry rot or bacteria; or

        **(2)**     The costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or

in any way respond to, or assess the effects of **"fungus,"** wet or dry rot or bacteria.

**\*\*\*\***

(Ex. A., PIIC0151-PIIC0152).

38. The Policy further provides:

**IV. CAUSES OF LOSS FORM**, Section **F. Definitions**, is amended by adding the following:

**"Fungus"** means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi

**\*\*\*\***

(Ex. A., PIIC0152).

39. The policy includes form PI-ULT-238 (01/19), titled Continuous or

Repeated Water Damage Exclusion, which states:

We will not pay for **"loss"**, damage, or other claim caused in whole or in part, by or resulting from:

**a.** continuous or repeated exposure, seepage, leakage or inundation of water; or

**b.** the presence or condensation of humidity, moisture or vapor;

that occurs or is present over a period of 30 days or more. Such "**loss**", damage or other claim is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the **"loss"**, damage or other claim.

(Ex. A., PIIC0167).

40. The policy contains the following provision regarding limits of insurance,

lost payment, valuation, co-insurance and loss conditions:

Form PI-ULT-007(11/98), titled Property Coverage Form, contains the following

limits of insurance and loss payment provisions:

**C.    Limits of Insurance**

The most we will pay for **"loss"** in any one occurrence:

**1.**    For each Additional Coverage is the Limit of Insurance applicable to that Additional Coverage.

****

**4.**    For all other coverage provided under this Coverage Form is the applicable Limit of Insurance shown in the Property Coverage Part Declarations.

**D.    Deductible**

We will not pay for **"loss"** in any one occurrence until the amount of the **"loss"** exceeds the

Deductible shown in the Declarations or schedules. We will then pay the amount of the **"loss"** in excess of the Deductible, up to the applicable Limit of Insurance, after any deduction required by any of the following:

**1.**    Coinsurance Condition;

**2.**    Agreed Value Optional Coverage; or

**3.**    Reporting Endorsement.

If more than one Deductible is applicable under this Coverage Form to **"loss"** in any one occurrence, we will only apply the highest applicable Deductible.

**E.    Loss Conditions**

****

**4.    Loss Payment**

**a.**    In the event of **"loss"** to Covered Property covered by this Coverage form, at our option, we will either:

      **(1)**     Pay the value of lost or damaged property;

      **(2)**     Pay the cost of repairing or replacing the lost or damaged property;

      **(3)**     Take all or any part of the property at an agreed or appraised value; or

      **(4)**     Repair, rebuild or replace the property with other property of like kind and quality.

**b.**     We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**c.**     We will not pay you more than your financial interest in the Covered Property.

****

**f.**     We will pay for covered **"loss"** within 30 days after we receive the sworn proof of loss, if:

      **(1)**     You have complied with all of the terms of this coverage form; and

      **(2)**     **(a)** We have reached agreement with you on the amount of **"loss"**;

      **(b)**     An appraisal award has been made; or

      **(c)**     Final judgment has been entered.

****

**7.**     **Valuation**

We will determine the value of Covered Property in the event of **"loss"** as follows:

**a.**     At replacement cost (without deduction for depreciation) as of the time of **"loss"**, except as provided in **b., c., d., e., f., g.,** and **h.** below.

      **(1)**     We will not pay more for **"loss"** on a replacement costs basis than the least of:

         **(a)**    The Limit of Insurance applicable to the lost or damaged property;

         **(b)**    The cost to replace the lost or damaged property with other property:

                **(i)**    Of comparable material and quality; and

                **(ii)**    Used for the same purpose; or

         **(c)**    The amount you actually spend that is necessary to repair or replace the lost or damaged property.

    **(2)**    We will not pay on a replacement cost basis for any **"loss"**:

         **(a)**    Until the lost or damaged property is actually repaired or replaced; and

         **(b)**    Unless the repairs or replacement are made as soon as reasonably possible after the **"loss".**

    If the repairs or replacement are not made as soon as reasonably possible after the **"loss"**, the value of the property will be actual cash value.

****

**8.**    **Pair, Sets or Parts**

    **a.**    Pair or set. In case of **"loss"** to any part of a pair or set we may:

         **(1)**    Repair or replace any part to restore the pair or set to its value before the **"loss"**; or

         **(2)**    Pay the difference between the value of the pair or set before and after the **"loss"**

    **b.**    Parts. In case of **"loss"** to any part of Covered Property consisting of several parts when complete, we will only pay for the value of the lost or damaged part.

(Ex. A., PIIC0108-PIIC0114).

41.     Form PI-ULT-007(11/98), titled Property Coverage Form, contains the following general conditions:

**E.      Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

\*\*\*\*

**3.      Duties in the Event of Loss**

**a.**     You must see that the following are done in the event of **"loss"** to Covered Property:

\*\*\*\*

**(4)**     Take all reasonable steps to protect the Covered Property from further damage by any of the Covered Causes of Loss. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim. This will not increase the Limit of Insurance.

\*\*\*\*

**(6)**     As often as may be reasonably required, permit us to inspect the property and records proving the **"loss"**.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

\*\*\*\*

**(9)**     Send us a signed sworn proof of loss containing the information we request to investigate the

claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(10)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must signed.

(Ex. A., PIIC0109-PIIC0110).

## COUNT I
## Declaratory Judgment Damages Not Caused by Frozen Pipe

42.     PIIC realleges and incorporates each of the preceding paragraphs of this Complaint by reference as though fully set forth at length herein.

43.     PIIC seeks the determination of coverage under PIIC's Policy pursuant to 28 U.S.C. § 2201.

44.     PIIC has no coverage under its policy for damages existing at the Church unrelated to the pipe freeze claim that occurred on or about February 26, 2021.  This includes unrelated roof leakage and deterioration of the front façade of the Church facility.  Costs related to damages caused from roof leakage and unrelated structural damage are not covered under the PIIC Policy.

45.     The insured's failure to mitigate water infiltration has resulted in mold proliferation in the building. While many of these costs appear to be unrelated to the

original pipe rupture or due to the insured's failure to mitigate, when covered they are limited to $25,000 based upon the Policy endorsement for mold.

46.     A justiciable controversy has arisen between PIIC and the Church regarding the amount of damages related to roof leaks that are not related to the pipe rupture and therefore not at issue under the PIIC policy.

47.     A justiciable controversy has arisen between PIIC and the Church regarding the amount of damages resulting from the structural instability of the Church that is unrelated to the pipe burst claim at issue between PIIC and the Church.

48.     A justiciable controversy has arisen regarding the damages caused by the insured's failure to mitigate unrelated roof leaks and other water intrusion resulting in damage to the Church building.

**COUNT II**
**Declaratory Judgment Damages Caused by Frozen Pipe**

49.     PIIC realleges and incorporates each of the preceding paragraphs of this Complaint by reference as though fully set forth at length herein.

50.     PIIC seeks the determination of coverage under PIIC's Policy pursuant to 28 U.S.C. § 2201.

51.     The PIIC Policy provides that PIIC will not pay for loss resulting from wear and tear, rust, corrosion, decay, deterioration, hidden or latent defects or mechanical breakdown. Here, the boiler showed evidence of wear and tear and deterioration including extensive corrosion, mineral deposition and long-term leakage in addition to evidence of modifications and removal and relocation of system components.

52.     The PIIC Policy also excludes coverage for water that leaks or flows from plumbing, heating or other equipment caused by or resulting from freezing unless the insured does "your best to maintain heat in the buildings; or you drain the equipment and shut off the supply if heat is not maintained."

53.     PIIC maintains that there is evidence of a significant decrease in gas usage at the church for the three months before the February 2021 loss during a period of time when the church was closed due to the COVID pandemic. PIIC maintains that the Church either failed to maintain heat as required by the policy, or the heating equipment failed due wear, tear and deterioration caused by the Church's failure to maintain the system. PIIC denied that the damages caused by the frozen pipe are covered under the PIIC policy.

54.     A justiciable controversy has arisen regarding whether the exclusions in the PIIC policy apply which are capable of resolution by this Court. These exclusions relate to the Church's claims related to the condition of the boiler which appears to have been subject to significant wear and tear, deterioration, corrosion and decay as well as modifications.  Questions also exist regarding whether the insured failed to maintain heat in the property prior to the February 2021 loss.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Philadelphia Indemnity Insurance Company respectfully requests that this Court enter judgment as follows:

A.     Declaring the obligations of PIIC and Vision for the World under the PIIC Policy No. PHPK2161178.

B.     Declaring the amount of damages at the church that are unrelated to the February 2021 water rupture arising from the Church's unrelated roof leaks, failure to mitigate water intrusion, and unrelated structural issues at the Church.

C.     Declaring whether PIIC's coverage exclusions apply to preclude coverage for the Church's claims related to the condition of the boiler and failure to maintain heat in the property prior to the February 2021 loss.

D.     Awarding PIIC such other and further relief as the Court deems just and proper under the circumstances.

Dated:  May 16, 2022

/s/ Stacy Broman
Stacy A. Broman, WISB#1041686
MEAGHER & GEER, P.L.L.P.
33 South Sixth Street, Ste. 4400
Minneapolis, MN  55402
Tel:    (612) 338-0661
Fax:    (612) 338-8384
Email: sbroman@meagher.com

(*Counsel for Plaintiff Philadelphia Indemnity Insurance Company*)

\15180522.1